NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT E. GORMAN, : | |
| : | Civil Action No. 04-00499(SDW) |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| MEEDER FINANCIAL SERVICES, INC., : | **OPINION** |
| and its subsidiaries MEEDER ASSET : | |
| MANAGEMENT, INC., ADVISOR : | |
| DEALER SERVICES, INC., and : | |
| ROBERT MEEDER, JR., Individually, : | |
| : | June 4, 2007 |
| Defendants. : | |

**WIGENTON,** District Judge.

Before this Court are Defendants' Meeder Financial Services, Inc., Meeder Asset Management, Inc., Advisor Dealer Services, Inc., ("Meeder") and Robert Meeder, Jr.'s (collectively "Defendants") Motion For Summary Judgment and Plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  The Court, having considered the parties' submissions and having decided the motions without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons set forth below, denies both motions.

This matter was removed to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ and 1446.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

I.     **PROCEDURAL HISTORY**

On October 30, 2003, Plaintiff filed a Complaint in the Superior Court of New Jersey, Morris County, Law Division.  The Complaint alleged three causes of action against Meeder Financial Services and Robert Meeder, Jr.[1]:

1. Age discrimination in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq.;

2. Breach of contract; and

3. Unlawful retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq.

On January 30, 2004, Defendants removed the state court action to this Court.  On March 31, 2004 Defendants moved for a stay of the federal action because of a related lawsuit filed by Defendants in Ohio.  This motion was denied on November 22, 2004.  At some point thereafter, Defendants dismissed the Ohio action.

On December 13, 2004 Plaintiff amended his Complaint to name additional defendants: Meeder Asset Management, Inc. and Advisor Dealer Services, Inc.  Defendants answered the Amended Complaint on January 25, 2005 and later filed a motion to amend the Answer to add certain counterclaims on April 25, 2005 and another motion on June 22, 2005 to add additional affirmative defenses.

---

[1] In its Brief in Opposition to Defendant's Motion for Summary Judgment, Plaintiff has withdrawn its CEPA claim, and clarified that Plaintiff is not pursuing a hostile work environment claim or breach of contract relating to "retirement trails".  (Pl. Opp. Br. at 2.)

## II.   LEGAL STANDARD

### A.   *Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To prove that no genuine issue of fact exists, "a movant must present a factual scenario without any unexplained gaps". National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1581 (3d. 1992) (citation omitted). "Where the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case". Id. "The moving party merely has to point to the lack of any evidence supporting the non-movant's claim. Id. (citation omitted). Where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent. Id. When the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. Id. (citation omitted.)

Once the moving party meets its initial burden, the burden then shifts to the non-movant who "may not rest upon the mere allegations or denials of [its] pleading, but the [non-movant's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the [non-movant] does not so

respond, summary judgment, if appropriate, shall be entered against the [non-movant]." Fed. R. Civ. P. 56(e). The court may not weigh the evidence and determine the truth of the matter. Anderson, 477 U.S. at 249. All justifiable inferences of the non-moving party are to be drawn in his favor. Id. at 255 (citation omitted).

### III.   DISCUSSION

#### A.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

##### 1.   COUNT ONE[2] – Plaintiff's Age Discrimination Claim

Plaintiff brings this age discrimination action pursuant to the New Jersey Law Against Discrimination ("NJLAD"). See N.J. Stat. Ann. 10:5-1 et seq. To sustain a claim of discrimination, New Jersey has adopted the procedural burden-shifting methodology articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Zive v. Stanley Roberts Inc., 182 N.J. 436, 447 (2005). The McDonnell Douglas framework consists of three prongs. First, the plaintiff must establish a *prima facie* case of discrimination. Then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Finally, the burden shifts back to the plaintiff to produce evidence that shows that the employer's proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Under the NJLAD, a plaintiff terminated from employment must establish a *prima facie* case of age discrimination by showing that: (1) he was in a protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless

---

[2] Plaintiff is not pursuing a claim for retirement trails as set forth in Count One of his Amended Complaint.

was fired; and (4) the employer sought someone to perform the same work after he left. Fischer v. Allied Signal Corp., 974 F.Supp. 797, 805 (D. NJ 1997)(citation omitted). Defendants concede Plaintiff has presented a *prima facie* case of age discrimination under the NJLAD. (Def. Mot. Summ. J. 40.) Therefore, the Court will now turn to the second prong of the McDonnell Douglas framework.

In the second prong of the McDonnell Douglas analysis, the burden of production, but not the burden of persuasion, shifts to the defendant, who must proffer legitimate, nondiscriminatory reasons for discharging the employee. In the instant matter, Defendants put forward 5 separate nondiscriminatory reasons for terminating Plaintiff:

> (1) the company was losing money, and engaged in a reduction in force (RIF) in order to cut costs;
> (2) the vice president of an important client of Defendant's was unsatisfied with plaintiff's job performance;
> (3) Plaintiff unacceptably suggested that he begin working part time for Defendant so that Plaintiff could become an independent contractor for other asset management firms;
> (4) Plaintiff lacked the requisite technical knowledge necessary to perform his job; and
> (5) Defendant came to the conclusion that Plaintiff "no longer had confidence in the services he was selling."

(Def. Mot. Summ. J. 41.)

In the third stage of the McDonnell Douglas framework, the Plaintiff must "*either* (I) discredit the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, [show] that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 764 (emphasis in original). Plaintiff need not produce additional evidence of discrimination beyond his prima facie case if he can point to evidence that sufficiently discredits Defendants' proffered

5

reasons. Id. Additionally, Plaintiff does not need to directly contradict Defendants' reasons. Id. To avoid summary judgment, a plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action". Id. (citations omitted.)

The Court notes that Plaintiff does not address each of Defendants' proffered reasons individually. Rather Plaintiff, in his brief in opposition, claims that all "five reasons are interrelated. Defendants' asserted non-discriminatory reasons for firing Mr. Gorman boil down to the fact that it needed to cut costs, and it claims Mr. Gorman was the logical person to fire because Meeder's President, Robert J. Meeder, believed Mr. Gorman's presentation had gotten 'old,' and claims Mr. Gorman had lost confidence in Defendants' products." (Pl.'s Br. in Opp. 5.) Plaintiff claims that "Defendant's argument begs the question of why it did not fire one of its other less productive but significantly younger salespeople." (Id. at 9.)

Defendants contend that Plaintiff must respond to each of the proffered reasons for termination, and that Plaintiff's failure to do so defeats his ability to sustain his age discrimination claim. (Def. Reply Br. 2.) However, it is not always necessary that a plaintiff cast substantial doubt on each one of a defendant's proffered reasons individually. If an employer proffers a number of reasons, and "the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." Fuentes, 32 F.3d at 764 n.7. Therefore, in the instant matter, if Plaintiff successfully casts doubt on some of the proffered reasons, he may not need to do so for all of them.

The Court will now examine each of the Defendants' proffered reasons separately to

6

determine if Plaintiff has "demonstrate[d] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,'" either in their totality or individually.  Id. at 765.

### a. The Company Was Losing Money and Engaged in a RIF in Order to Cut Costs

Defendants' first proffered reason is that the company needed to cut costs, and decided to do so by engaging in a RIF.  Defendant was struggling financially in the years preceding Plaintiff's termination.  According to Defendant, the "stock market suffered its worst bear market since the Great Depression from early 2000 to the first quarter of 2003." (Def. Mot. Summ. J. 17.)  Further, Defendant's net income dropped by 60% from 2001 to 2002 and in 2003 the company suffered its first and only net loss.  (Id.)  Defendant points to the fact that it reduced its workforce by 19% from the end of 2002 to the end of 2003.  (Id.)   Plaintiff responds by pointing to evidence that he was one of, if not the most, productive salespeople in the company, and that if Defendant were not motivated to terminate Plaintiff because of his age, it would have terminated a less productive salesperson.  (Pl.'s Br. in Opp. 9.)  Plaintiff "won the Salesman of the Quarter award five or six times in the first eight quarters he worked for Defendant, and won the Salesman of the Year award in 2000 and 2001" (at which point Defendant discontinued the awards).  (Pl.'s Br. in Opp. 7.)  Plaintiff was also Defendant's "top producer" in 2001 and 2002 (Sullivan Dep. 69:20-24), outperforming all other salespeople combined in 2001 (Sullivan Dep. 76:3-18).  In August 2002, Plaintiff was promoted to the position of Vice President and was put in charge of Defendant's sales staff.  (Pl.s Br. in Opp. 8.)  Finally, in 2002, in the midst of the 'bear market' Defendant refers to, Plaintiff managed to add over 700 new accounts.  (Gorman Dep. 135:20-

136:14.)  Accordingly, Plaintiff was clearly performing at a high level for Defendant.

In a RIF situation, "competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." Healy v. New York Life, 860 F.2d 1209, 1220.  However, "even in a genuine RIF (one that is motivated on a programmatic level by economic concerns), individuals may not be selected for layoff on the basis of age." Tomasso v. Boeing Co., 445 F.3d 702, 707 (3d Cir. 2006).  In such RIF cases, evidence of earlier accomplishments, promotions, awards and evaluations can be used to show pretext.  Id. at 708-709 (citing Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1073-74 (3d Cir. 1996)).  Plaintiff's evidence of his prior successes, achievements, and awards in his position as a salesman for Defendant exposes sufficient weaknesses - even in a RIF context - in Defendant's proffered reason to cast doubt as to its accuracy.

**b. The Vice President of Lincoln Investment Planning Was Unsatisfied With Plaintiff's Job Performance**

Defendants' second proffered reason is that an executive at their "most important broker in the Mid-Atlantic region [Lincoln Investment Planning], Mr. Forst, complained about Plaintiff's performance and advised Meeder to make a change in its territory." (Def. Mot. Summ. J. 41.)  Defendants interpret these statements to mean that Mr. Forst thought Plaintiff should be fired, and did so to protect and ensure the continued business relationship with Lincoln Investment Planning.  (Def. Mot. Summ. J. 19.)  Defendants contend Mr. Forst stated that Plaintiff's performance was getting "stale" (Forst Dep.37:15-17), and that he suggested that "[s]ometimes you just need a new messenger" (Id. at 38:12-13).  However, this is an incomplete and inaccurate portrayal of what Mr. Forst said during his deposition.  Mr. Forst never suggested

that Defendants should terminate Plaintiff. (Id. at 73:17-19.) In fact, a review of Mr. Forst's deposition reveals that Mr. Forst: liked Plaintiff's presentation (Id. at 58:8-9), that Plaintiff's presentation was "[h]elpful, interesting, new, original" (Id. at 27:17), and that despite the fact that he may have suggested that Defendant get a "new face," this "was not a reflection on [Mr. Gorman's] ability" (Id. at 38:10-14). Therefore, because a complete review of Mr. Forst's deposition demonstrates inconsistencies and contradictions with Defendant's proffered reason, a reasonable jury could find it unworthy of credibility.

      **c. Plaintiff Unacceptably Suggested Becoming an Independent Contractor**

Defendants' third proffered reason is that Plaintiff inappropriately proposed that he become an independent contractor in order to work for other similar asset management firms. This proposal was made by way of e-mail, dated March 13, 2003 and states:

> I would like to change my employment status with Meeder Financial from employee to an independent contractor. This would decrease my fixed cost to you substantially and would allow me freedom to concentrate within Meeder as we discussed, and to represent other companies where they have sales agreements. I would want compensation as shown. [Chart removed] There are obvious fixed expense savings for you under this plan. My compensation will be switched to more of a variable expense based upon production with a better trail.

(E-mail from Pl. to Robert Meeder, March 13, 2003.) Interestingly, Mr. Meeder never responded to Plaintiff's proposal. Nevertheless, Defendant claims that this proposal led Mr. Meeder to draw the conclusion that "[P]laintiff was not committed to [the] company." (Def. Mot. Summ. J. 20.) Mr. Meeder has testified that he "did not see how [P]laintiff could adequately represent Meeder and at the same time represent other companies' services." (Id. at 21.) Although Plaintiff admits that he did indeed suggest that he become an independent contractor, his stated

9

reason for doing so was to decrease cost to Defendant. (E-mail from Pl. to Robert Meeder, March 13, 2003.) Plaintiff claims that he made the suggestion because he was concerned that he would be fired because of his age and the revenue problems the company was facing at the time. (Gorman Dep. 223:6-7, 128:14-18.) Plaintiff claims that he was hoping that if he could save the company some money, he could prevent himself from being terminated. (Gorman Dep. 223:10-12.) In light of the fact that the company was in dire financial straits, this testimony reveals weaknesses in Defendant's proffered reason such that a reasonable jury could determine that it is unworthy of credence.

### d. **Plaintiff Lacked the Requisite Technical Knowledge Necessary to Perform His Job**

Defendants' fourth proffered reason is that Plaintiff lacked the technical knowledge necessary to explain Defendant's "story" in "an increasingly competitive market." (Def. Mot. Summ. J. 41) Defendant claims that "Plaintiff's greatest weakness as an ESC [External Sales Consultant] was his lack of knowledge regarding the technical aspects of Meeder's decision making, and his inability to explain those things to his clients." (Id. at 11.) Defendant states that it had a problem with Plaintiff's performance because he "did not have a good enough handle on what we did and how we did it. . . as well as [Plaintiff's] being able to articulate why we're invested the way we are." (Id.) Further, Defendant claims that Mr. Forst said Plaintiff "had a difficult time expressing and communicating [Defendant's] investment decision-making process." (Id. at 14.) Defendant suggests that it "expected that someone in [P]laintiff's position would have been able to develop a better understanding of its investment decisions so that he could accurately and convincingly communicate those strategies to [Defendant's] clients and

potential clients." (Id. at 12.)  Plaintiff responds to Defendants' reason by claiming that Defendant did not provide him "information regarding how its investment decisions were made, and it is my understanding that it did not provide that information to any of its salespeople. Instead, it made its investment decisions behind closed doors, and gave vague explanations for its decisions, such as stating that 'the weight of the evidence' supports its decision." (Certification of Robert E. Gorman ¶2.)  Plaintiff also points out that during Mr. Forst's deposition he stated that Defendant needed to "take *all his wholesalers* and get them additional training." (Forst Dep. 32-33:22-4.) (emphasis added)

While Defendants contend Plaintiff's lack of technical knowledge gave rise to his termination, this rational appears suspect as any lack of knowledge on the part of Plaintiff seems to have had no effect on his ability to perform his duties as a salesman, as evidenced by the numerous awards Plaintiff received and the fact that Defendant promoted him less than a year before terminating him.  Therefore, Plaintiff's evidence exposes sufficient weaknesses and inconsistencies as to Defendants' fourth proffered reason such that a reasonable jury could choose not to believe it.

e. **Defendant Came to the Conclusion that Plaintiff "No Longer Had Confidence in the Services He Was Selling"**

Defendants' fifth proffered nondiscriminatory reason for terminating Plaintiff is that Defendant had determined that Plaintiff "no longer had confidence in the services he was selling. . . [and] that sales representatives cannot be effective if they do not believe in their services." (Def. Mot. Summ. J. 41-42.)  Defendant claims that this opinion was developed during a series of sales calls Mr. Meeder made with Plaintiff in March of 2003. (Id. at 19.)  Defendant claims that

11

Plaintiff complained "during the trip that the performance of the Meeder services was making it difficult to sell them." (Id.) While Plaintiff admits stating this, he also contends that Mr. Meeder made the same comments. (Gorman Dep. 156:10-15.)

In addition, the claim that Plaintiff "no longer had confidence in the services he was selling," is at best a vague and subjective evaluation of Plaintiff's abilities and performance as a salesman. The Third Circuit has held that "subjective evaluations 'are more susceptible of abuse and more likely to mask pretext.'" Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990) (citing Fowle v. C & C Cola, 868 F.2d 59, 64-65 (3d Cir. 1989)). Any suggestion that Plaintiff lacked a subjective quality that would make him an effective salesman is contradictory to the evidence of his excellent performance as a salesman during his employment with Defendants. Accordingly, consideration of Defendants' fifth proffered reason reveals inconsistencies and contradictions such that a reasonable jury could find it lacks credibility.

### 2. COUNT TWO — Breach of Contract Claims

#### a. AssetMark Account

Plaintiff contends that in 2002 Mr. Meeder promised all sales force members working on AssetMark accounts 10% of commissions on the production income generated from AssetMark. (Plaintiff's Amended Compl. at ¶ 22.). These commissions total approximately $10,000. (Id. ¶ 24.) Defendants contend they never made a commitment to provide commissions on the AssetMark account and that there was simply no offer and acceptance giving rise to a contract. Although Mr. Meeder agreed to pursue Plaintiff's suggestion for a commission program, Defendants contend nothing could have led Plaintiff to believe Mr. Meeder had implemented the program. (Def. Mot. Summ. J 28 - 29.) However, Mr. Meeder indicated that if certain

information could be obtained about accounts and assets, there would be no problem in paying the incentive compensation. (Meeder Dep. 218:7-19 & 218:20-219:3.) Based on these statements, a jury could find that a valid contract - unilateral or otherwise- arose between the parties (i.e. that Plaintiff's interpretation of this statement was reasonable) and that Mr. Meeder breached that contract by not paying - or even ascertaining - what if anything was due Plaintiff. Therefore, summary judgment will be denied as to this issue.

### b.   Commissions

Plaintiff also claims Mr. Meeder interfered with his rights to collect for individual commissions owed in the amount of $3,000. (Pl. Amended Compl. at ¶¶ 25-26.) However, Defendant states that this claim "does not merit further discussion" and does not set forth any grounds as to why summary judgment should be granted. (Def. Mot. Summ. J 28.) This is simply insufficient grounds upon which to grant summary judgment.

### 3.   The After Acquired Evidence Doctrine

Defendants argue the doctrine of after acquired evidence operates to limit Plaintiff's economic damages. This doctrine applies in cases where an employer discovers separate grounds for terminating plaintiff after the termination has occurred. However, an employer may not rely on every minor instance of misconduct to invoke the defense. Miller v. Beneficial Management Corp., 855 F.Supp. 691, 714 (D. NJ 1994). Moreover, to do so successfully, the employer must prove that had it known of the employee's misconduct, it would have terminated the employment. Id. The employer bears the burden. However, the employer does not meet this burden by proving simply that it could have fired the employee for the misconduct; the employer **must establish it would have terminated** the employee. Id. (Emphasis added.)

In the instant matter, this defense is crucial to Defendants, as they contend that upon being terminated, Plaintiff provided the separate grounds for dismissal when he admitted that he was on his way to visiting a client not for Meeder – but for MRM, another company he had been working for as an independent contractor. If this employment constitutes such separate grounds requiring termination, Plaintiff would be barred from obtaining equitable remedies such as backpay. Plaintiff counters by arguing that he would not have been terminated upon these separate grounds and that in any event, Defendants are barred from raising the defense because they did not plead it in their Answer. Accordingly, this Court will first addresses whether Defendants may invoke the defense in this action.

      **a.**      **Defendant's Failure to Plead the After Acquired Evidence Doctrine as an Affirmative Defense**

Federal Rule of Civil Procedure 8© sets forth specific affirmative defenses that must be plead. Aside from those enumerated, the rule also provides that a party shall set forth "any other matter constituting an avoidance or affirmative defense." F.R.C.P. 8©. Affirmative defenses not plead are generally deemed waived. Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991). While after acquired evidence is not enumerated in the rule, Plaintiff contends it is nevertheless an affirmative defense - although the cases cited do not hold this proposition. See, e.g. McNemar v. Disney Store, Inc., 91 F.3d 610 (1996). Whether it is or is not, "a prudent pleader, to avoid waiving an otherwise valid defense, will exercise caution, thus pleading [a] matter that technically may not be labeled an affirmative defense". Rehabilitation Institute of Pittsburg v. Equitable Life Ass. Soc. of the U.S., 131 F.R.D. 99, 101 (W.D. Pa. 1990). Since after acquired evidence falls into the catch-all phrase of R. 8©, this Court finds it is an affirmative defense that

must be plead.[3]

In the instant matter, Plaintiff contends that since Defendants did not plead the defense of after acquired evidence in its Answer, Defendant can not now raise it. Defendants argue that it should be allowed to conform the pleadings because it requested, and Plaintiff gave its consent, to amend the pleadings to include this defense on July 28, 2005. Defendants memorialized this agreement by letter dated July 29, 2005. (Exs. B & C to Certification of James K. Webber, in support of Reply Brief to Def.'s Mot. Summ. J.) According to the July 29, 2005 letter, Plaintiff's counsel was to write the Court advising of the consent, per Fed.R.Civ.P. 15(a) because the date to amend the pleadings had expired. Plaintiff's counsel never wrote that letter. While Defendants made no further attempt to remedy the problem until the filing of its Reply Brief in the instant application, and as will be discussed below, this Court will grant Defendants' request to amend the pleading.

Amendments of pleadings is governed by Fed.R.Civ.P. 15, which states that a party may amend its pleading "only by leave of court or by written consent of the adverse party; **and leave shall be freely given when justice so requires**." R. 15(a) (emphasis added). This includes amendments of an answer to include an affirmative defense. Here, after acquired evidence is an affirmative defense Defendants must have raised in order to invoke it now or at the time of trial. Plaintiff was aware of Defendants' intent to invoke the defense at least by June 2005 when it sought Plaintiff's consent - and which it appears was given almost 1 year prior to the instant motions. Accordingly, Defendants have ten (10) days to file its amended pleading.

---

[3] Defendants do not argue it is not an affirmative defense.

15

      **b.**      <u>**Defendant's Ability to Satisfy the After Acquired Evidence Doctrine**</u>

As stated above, Defendants must show it would have fired Plaintiff had it known of his employment with MRM. Defendants argue that it would have done so, because MRM is a competitor of Meeder. Mr. Meeder also claims he rejected Plaintiff's independent contractor proposal and that Plaintiff's employment with MRM violated its Non-Compete Agreement. However, Mr. Meeder did not immediately reject the proposal. Defendants have also not established that MRM was a competitor of Meeder Financial. While Mr. Meeder considers MRM a "direct competitor", there is insufficient evidence in the record to award summary judgment on this issue, as this presents a genuine material issue in dispute.

Moreover, on its face, the Non-Compete Agreement does not specifically prohibit outside employment or even employment with a competitor. It does, <u>inter</u> <u>alia</u>, prohibit the disclosure of "Confidential Information" and the solicitation or acceptance of business from any person/entity who was a client of the Company within 1 year of departure from Meeder. (December 21, 1999 Confidentiality and Non-Competition Agreement for Key Personnel.) It is disputed by Plaintiff that he did so and Defendants have simply failed to set forth how working for MRM violated the Agreement in a manner that supports a conclusion Plaintiff would have been fired in a manner that supports summary judgment.

Based on the facts currently before the Court, it can not be concluded, as a matter of law, that Defendants have established the elements of a defense based on after acquired evidence to grant judgment on their behalf. The evidence, viewed in the light most favorable to the non-mover Plaintiff, does not support a finding that Defendants would have unequivocally fired Plaintiff.

### B. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on Defendants' counterclaim, which consists of three counts:

    1.    Violation of the duty of good faith and loyalty;

    2.    Violation of trade law secrets; and

    3.    Violation of the Confidentiality and Non-Compete Agreement.

(Def. Am. Answer and Counterclaim at 6-11.)

On December 21, 1999, Plaintiff executed the Confidentiality and Non-Competition Agreement for Key Personnel ("Agreement"). This Agreement prohibits, <u>inter</u> <u>alia</u>, dissemination of "confidential information" and contains a covenant not to compete. (Agreement ¶ 2 & 3.) The Agreement further provides that it will be construed in accordance with the laws of the State of Ohio without reference to its choice of law rules. (<u>Id.</u> at 10.) Plaintiff argues his motion for summary judgment under applicable New Jersey law, and Defendants oppose by also applying New Jersey law, stating it is unnecessary to perform a choice of law analysis at this summary judgment stage since the law is similar in both jurisdictions. (Def.'s Opp Br. at 18, n.6). Defendants cite no legal authority for this proposition.

*Choice of Law*

"When determining which state's substantive law to apply, a Federal court, in a diversity action, applies the choice of law rules of the forum state. <u>Stanton v. Rich Baker Berman & Co., P.A.</u>, 876 F.Supp. 1373, 1381 (D.N.J. 1995) (citations omitted). Accordingly, the Court will apply New Jersey choice of law rules in the instant matter.

17

Under New Jersey law, if "parties to a contract have agreed to be governed by the laws of a particular state, New Jersey Courts will uphold the contractual choice if it does not violate New Jersey's public policy." North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 568 (1999) (quoting Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992)). However, the court should apply New Jersey law if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

Id. at 568-569 (quoting Instructional Sys., 130 N.J. at 342).

In the instant case, the substantial relationship test has been satisfied, as Meeder is an Ohio corporation with its principal place of business in Ohio and plaintiff traveled to Ohio for meetings over the course of his employment. See North Bergen, 158 N.J. at 569. Further, neither party has claimed that applying Ohio law would be contrary to New Jersey public policy, and in fact the law governing these claims is similar in both states.[4] Therefore, at this juncture, this Court will apply Ohio law.

*Violation of the Duty of Good Faith and Loyalty*

Defendants contend Plaintiff violated the duty of good faith and loyalty he owed them by working for MRM while employed with Meeder Financial because the companies are

---

[4] Both Defendants and Plaintiff have argued their respective positions under Ohio and New Jersey law. In fact, Defendants' counterclaims allege violations of Ohio and New Jersey law. Applying either Ohio or New Jersey law evinces the same result as to all three counterclaims.

competitors and engage in similar, if not identical, business. Ohio courts "have concluded that an employee "owes his or her employer a duty to act in the utmost good faith and loyalty to his . . . employer". Extracorporeal Alliance, L.L.C. v. Rosteck, 285 F.Supp.2d 1028, 1044 (N.D.Ohio 2003)(citations omitted). This duty of loyalty is breached when an employee competes with his . . . . employer. Id. Here, Plaintiff contends each company had sales agreements with different financial concerns and that he did not solicit or steal clients. Because whether MRM and Meeder were competitors and whether the businesses Plaintiff called upon with MRM were past or current clients are material issues in dispute, summary judgment will be denied.

*Violation of Trade Law Secrets*

  As to the second claim, that plaintiff violated trade secret laws, Defendants contend he disseminated their "confidential" fee structure. To establish such a claim, Defendants must first establish that a trade secret exists. Penetone Corp. v. Palchem Inc., 627 F.Supp. 997, 1005 (N.D.Ohio 1985). A trade secret means " . . . any business information or plans . . ." that both "derives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy". Ohio Rev. Code Ann. § 1333.61(D). Defendants must also establish that Plaintiff :

> at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the

person seeking relief to maintain its secrecy or limit its use.

Ohio Rev. Code Ann. § 1333.61(B)(2)(b).

In the instant matter, Defendants have established that Plaintiff disclosed Meeder's fee structure to MRM and at the very least, whether the fee structure was a trade secret is a genuine issue of fact to be considered by a jury. Accordingly, this Court will deny summary judgment as to this claim.

*Violation of the Confidentiality and Non-Compete Agreement*

Defendants contend Plaintiff violated the Confidentiality and Non-Competition Agreement for Key Personnel. The Agreement prohibits, inter alia, dissemination of "confidential information" and contains a covenant not to compete. (Confidentiality and Non-Competition Agreement for Key Personnel ¶ 2 & 3.) As discussed above, whether Plaintiff violated these provisions by soliciting Meeder clients or disclosed confidential information by way of the fee agreement are genuine issues of fact which warrant a denial of summary judgment on this claim.

### V.    CONCLUSION

For all the above reasons, this Court will deny both Defendants' and Plaintiff's Motions for Summary Judgment.

s/Susan D. Wigenton, U.S.D.J.